Good morning, Your Honors. My name is Evan Murray. I'm representing the petitioner this morning. May it please the Court, we have something of an unusual case in this instance. Let me tell you something, every case begets unusual. Only some of the lawyers are unusual. Thank you, Your Honors. Let me try to characterize this case as something of a hybrid where the Board of Immigration Appeals takes the unusual step of first just accepting and confirming the decision of the immigration judge. And then it puts itself in the, well, essentially usurps the position of finder of fact because then it launches out and makes its own findings of fact. I think if you read the letter carefully, it's unlike the situation where the BIA is adopting the findings of the immigration judge. What the BIA says is we agree with the outcome reached, but it has its own reasons and it cites its own reasons. So I think that we're limited to looking at the BIA's reasons because it didn't simply adopt the IJ's. Okay, I would like to address each of the reasons that the BIA cited, very interesting reasons. The first reason that the BIA cites is a discrepancy between the address, which was, well, let me preface that by saying that there was... Well, here it is. The BIA criticized Lew for providing inconsistent addresses for a woman who had offered a corroborating letter. Right? Yes, Your Honor. That's specifically... Well, the thing that's so unusual in this instance is there was a witness statement that was sent in an envelope that had an address on it. And then the witness also provided an ID card supporting, you know, identifying the witness. What the BIA didn't point out was that the address on the ID card was produced in 1996 and the address on the envelope was addressed in 2003. A seven year difference. And for them to say there's a credibility problem because there's two different addresses, I mean, you know, that's pure speculation to assume that this is some new family. I mean, it's just such a disconnect that to use this as a reason to question the petitioner's credibility just makes no sense whatsoever. All right. What's the next one? Let me ask a question because I am a visitor and I don't do these immigration cases to the extent that my colleagues do. But I looked at the case of Marino Morante and that case stood for the proposition that where the BIA affirms the IJ and does not express disagreement with any part of the IJ's decision, the BIA effectively adopts the IJ's decision in its entirety. And I guess I'm trouble. I tend to agree with you that perhaps the BIA's four reasons that they note are not persuasive. But I have a hard time accepting the proposition to the extent they say anything beyond the word affirm or whatever. They are erasing everything that the IJ wrote. The Marino Morante decision tells me that that's not the case. And even the Andea case, which stands for that proposition, that court dealt with the IJ issues. There was a seven-month delay from the time they found out that the removal hearing had occurred before they reapplied. And the IJ dealt with it, notwithstanding the fact that they acknowledged that in reviewing a decision of the BIA, we consider only the grounds relied upon by that agency and so forth. So you didn't deal in your briefing with the multitude of reasons that the IJ cited for lack of credibility. You tended to focus on the four that the BIA. And I'm trying to come to grips with immigration jurisprudence, if you will. Surely, Your Honor. And you're absolutely correct. In deference to the comment by Your Honor, that we, you know, because of the fact that. This is my view. And I. Well, and I concur with that view. However, I would like to address the comment that you've made. You're correct in the fact that the that the BIA has essentially adopted the immigration judge's findings and then added their own. But if you take a careful look at the immigration judge's findings, which was done very completely in the response that was filed with the BIA and the appeal that was filed with the BIA in reviewing the immigration judge's findings, each and every one of them are absolute speculation. And I can go through the list. It would take all of my time to do so. But each and every one of them are nothing but pure speculation. There's not one fact that's substantiated by anything factual at all. They're all speculation that the you know, that the person would have no trouble leaving China. Speculation as to why the person didn't apply in Japan. Well, you know, petitioners in Japan all in 24 hours and didn't even speak Japanese. But for the immigration judge to find that this is a reason to doubt his credibility, the fact that he didn't apply in Japan. He also reached the conclusion that the documents were more likely than not purchased and they were fraudulent from the get go. And that she perhaps relied improperly on the fact that he admitted that he had purchased the initial document that got him out of the country. Was purchased on the market in China. These documents apparently are available on the market. There's no question about the fact that these people, if they're being persecuted in China, are going to use any means available and often do. I mean, it's very similar that they do. But the thing that's interesting that you point out is that the immigration judge has absolutely no basis other than speculation for saying that his documents are quote, likely fraudulent. There's no forensic opinion. The immigration judge is using, here again, pure speculation as to the documents. But also, don't we have case law on that point too? Yes, Your Honor. And what does that case law say? I can't quote it and I can't pull it out from memory and I apologize for that, Your Honor. But basically, the case law says that the judge cannot use pure speculation. Well, it's not just the speculation. It's the documents to gain entry to the country that we assume that a lot of people who are fleeing their countries of origin, who assert that they're being persecuted there, are going to have to get some fraudulent documents to get out of the country. And I believe the case law that you're referring to says that you can't impute from the fact that the petitioner used a fraudulent document, which he freely admitted was fraudulent in the court. He wasn't trying to deceive the court in that regard. But to impute that because that document was fraudulent, that his other documents supporting him, his case is fraudulent, is impermissible. And that's why I suggested that she probably did that improperly. However, can she not then go through the documents that were presented to her and note the various inconsistencies and dates? And more importantly, perhaps, the inconsistency in terms of the description of his status in the various, in the very, I mean, I tried to wrestle with, well, he was a worker in 1990, in 1969 to 78. And then he was in charge of molding. And then he became the factory president. But there were other documents later that said during the same time he was president, he was something less. And I understand in a society that prides itself on being totally egalitarian, perhaps there's some explanation. But it seemed to me that there were significant discrepancies about his leadership role in this factory, which probably does go to the heart of why he was persecuted. Because if he weren't a leader, he wouldn't have been able to use the factory for these Falun Gong activities and so forth and so on. Well, and not only that, Your Honor, but if there are blatant discrepancies in the document that is going to create an obvious credibility gap, he's not going to submit these documents to support his statement. The fact that he does submit these documents, you know, gives him the implication that, you know, he's not going to intentionally subdiffuse his case or create a problem. He's not making bulletproof, then, because to the extent they're accurate, he's in, and to the extent they're inaccurate, he's truthful. Well, he's certainly not going to intentionally, you know, create a problem in his own case. Thank you, Your Honors. Thank you. All right. Thank you. We'll hear from the government. Good morning, Your Honor. May it please the Court, my name is Brooke Maurer for the respondent, the U.S. Attorney General. In regard to this case, with the adverse credibility finding, it is the government's belief that the BIA did, in fact, adopt and affirm and then add their own. They didn't say that they did that. They didn't say that. In fact, they didn't even affirm it. Well, they adopted it. No, they did not say that, and the word affirm does not even appear in the BIA's order. Well, they agreed with the IJ's outcome. They agreed with the outcome. Correct. That doesn't mean they agree with the reasoning. No, but they added their own reasoning, and that is typically looked at in addition to. That's what we're looking at. Yes. So looking at both of the decisions. No, we typically don't. They say, well, we agree with the way it ended, but we're not agreeing with the reasoning. We're giving our own reasons. They put that in there. They gave their own reasons, and that's what we're supposed to review on appeal. I mean, this goes on all the time. You know, I've done that. It's really not that. I agree with the outcome, period, special concurrence. Actually, it's kind of that. It is unusual for the BIA to issue its own opinion in this way. I mean, normally we would just see a summary affirmance, or they'll say we adopt and affirm, and they cite a particular case, which I can't recall right now. But they didn't do that here. Well, as far as the mention about the Japanese refuge, as you saw from our brief, that we conceded that that was an improper basis for them to make that determination on. And then as far as the failure to supply ample corroborating evidence, the government believes that there was ready and available corroborating evidence to support the claim and the petitioner. What was the readily available corroborating evidence? The petitioner was in the United States for a period of a year, basically living for seven months with his family members, allegedly practicing Falun Gong. He had received documents, which still remain questionable as to his credibility, from both his wife and additional people that he had worked with previously. And, I mean, of course the taint came from originally the petitioner admitting to submitting fraudulent documents initially. All right. Well, the BIA, in support of that conclusion, cites our decision in situ. Do you remember that case? Vaguely, yes. Well, the BIA apparently relied on situ. But in situ, the readily available, easily corroborative evidence was testimony by the father, who the court went out of its way to say was only 45 minutes away by car from the hearing and could easily have come in to corroborate. And that's very different from the situation in this case. Well, likely also petitioner also did live not far away with his two roommates who were also aware of his practice of Falun Gong, where he practiced in the backyard. But that's not what the BIA says.  Well, no, but they're just asking, the BIA here explicitly just asked that, evidence showing that he has practiced Falun Gong in the country, and by his two roommates being aware of that and them knowing that he practiced in the backyard, I mean, the government would contend that that would be, in fact, relevant to this. Well, did the BIA give this gentleman an opportunity to offer, to explain any perceived inconsistencies? I don't believe that there was a hearing, but I know that petitioner had the opportunity to brief the BIA below. Right, but this is a new reason the BIA gave. And did the petitioner have an opportunity to respond to that? Well, I believe this holding is similar also to what the IJ came up with as far as his failure to provide ample corroborating evidence in support of his claim in addition. So although this is an articulated basis, it was a similar basis to which the immigration judge had also relied upon. Really? Where does the IJ do that, say that, make that statement? Well, throughout the testimony, the IJ himself questioned the petitioner about whether or not he had any evidence to present showing that he practiced Falun Gong by either people that he practiced it with here in California, also with if he had any evidence from his cousin in North Dakota and the family members that were there. Where was the hearing? The hearing was, I believe, in Los Angeles. So the cousin would not be readily and easily available. No, petitioner also admitted to the fact that he had made several friends and practiced here in Los Angeles with people that had Falun Gong in the parks. So where does the IJ say that? I just can't find it. I don't have it highlighted. Page 10 of the immigration judge's opinion. What's the ER number? I apologize. I think it's in the 20s or the 30s. And that would be the second and the third full paragraphs relating to... Okay, this is what you're referring to? That is correct. The court finds it completely incredible that the respondent was practicing in his backyard in the United States, would not, as he stated, better himself and improve his Falun Gong practice by joining the people in Vincent Luga Park or anywhere else in the Los Angeles area with Falun Gong practitioners in the park and have no witnesses to come to the court to testify. So is that a routine requirement now? No, but I think based upon his leeriness, based on the fraudulent documents and other issues that he had and plausibilities with the petitioner's case, he asked for some type of corroborating evidence. And this was not a difficult piece of evidence to bring forth. I'm still stuck on whether or not we totally ignore the IJ's reasoning. Do you have any comment on that? No, just as before, it was the government's intention in briefing that because they adopted the decision that they looked at it the same as where you looked at the IJ's reasoning in addition to the additional reasoning given. It's a very curious order that they wrote. I agree wholeheartedly with Judge Wardlaw. I've never seen a court begin to state their reasons for making a decision by using the word we note. That doesn't even, that's not even a word that has an echo for an important decision affecting somebody's life. But that's... I wouldn't hold the BIA to the standards of the District Court and the Eastern District of Washington. Right. But typically, and I think the government counsel would agree, when they adopt and affirm, they say we adopt and affirm. They use that language and there's a particular case they cite, right? Yes. I just can't remember what the case is. It's not Bourbono, it's... It might be. It might be Bourbono. But no, this is relative hybrid as far as the verbiage that they used in there. But if there's any further questions? What do you know about the attorney that represented him before the IJ? When Mr. Chow? Yeah. Not much. Okay, thanks. Of course. Are you associated with Mr. Chow? I'm not, Your Honor. I'm acquainted with who he is, but I can't tell you any more about that, about his practice. I would love to respond to the last question. Yeah, go ahead, go ahead. In regard to the immigration judge's comment that he failed to, you know, that there were so many people in the park, he actually testified specifically to the immigration judge in regard to that. He said the reason I didn't, or he said I started to do that, but the reason I didn't continue is because I had to walk 40 minutes to reach the park, and a round trip would take me an hour and a half. And that's why he just didn't find the time to go to that park, and so that's why he was practicing Falun Gong by himself in the backyard. What about the government suggests that he should have brought in his roommates or his friends or something? Well, frankly, Your Honor, if it had been me instead of Mr. Chow, I would have suggested that he do that. I agree with that comment, and I, you know, although I would also add that the court can't use that as a, you know, they can't say because you didn't do this, then you lack credibility. So this I.J. kind of threw the kitchen sink at him. Yeah, all on speculation, exactly. That's very true, Your Honor. I didn't mean to take up a lot of time, but thank you. I wanted to address that issue.
judges: Pregerson, Wardlaw, Leighton